**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| OWNERS INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | Case No. 1:23-cv-02926 |
| COLLIERS BENNETT & KAHNWEILER LLC, a foreign limited liability company, and INGRAM SERVICES, INC., an Illinois corporation, | Honorable Jorge L. Alonso |
| Defendants. | Magistrate Judge Heather K McShain |
| COLLIERS BENNETT & KAHNWEILER LLC, | |
| Cross-Claimant/Third-Party Plaintiff, | |
| v. | |
| INGRAM SERVICES, INC. | |
| Cross-Defendant/Third-Party Defendant. | |

**Memorandum Opinion and Order**

Plaintiff Owners Insurance Company ("Owners") filed this lawsuit seeking a declaratory judgment that it does not owe insurance coverage to Defendant Colliers Bennett Kahnweiler, LLC ("Colliers") and seeking a reimbursement of defense fees and indemnity expended in *Chmielewski v. Walker Partners and Colliers Bennett & Kahnweiler LLC*, Case No. 2018 L 013785 in the Circuit Court of Cook County, Illinois, County Department, Law Division (the "Underlying Litigation"). Shortly thereafter Colliers filed a third-party complaint against Ingram Services ("Ingram") asserting claims for breach of contract. Ingram filed a motion to dismiss the third-party complaint for failure to state a claim (ECF No. 29).

1

Between the time of Ingram's motion and Colliers's response, Owners added Ingram as a direct defendant. Therefore, Colliers answered the amended complaint and re-styled the third-party complaint to a crossclaim (the "Crossclaim"). (ECF No. 38.) However, because the pleading remained the same in substance, both parties proceeded with the briefing initially filed with respect to the third-party complaint. In accordance with the parties' wishes and in the interest of judicial economy and efficiency, the Court construes the motion to dismiss—initially filed with respect to the third-party complaint—as a motion to dismiss the Crossclaim. For the reasons that follow, the Court denies Ingram's motion [29].

**Background**

The Court takes the following facts from the Crossclaim, which are accepted as true for motion to dismiss purposes. *See Lax v. Mayorkas*, 20 F. 4th 1178, 1181 (7th Cir. 2021); *Huntington Nat'l Bank v. Midwest Heart & Vascular Assocs., Inc.*, 683 F. Supp. 3d 781, 783 (N.D. Ill. 2023). The Court also considers "documents attached to the [Crossclaim], documents that are critical to the [Crossclaim] and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Colliers's brief opposing dismissal (ECF No. 40), so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted).

Colliers managed property owned by North Shore Industrial Holdings LLC ("North Shore") and located at 7601–7661 New Gross Point Road in Skokie, Illinois (the "Property"). On November 10, 2014, North Shore, by and through its agent Colliers, entered into a Services Contract with Ingram under which Ingram agreed to provide snow and ice management services at the Property, which involved plowing and salting of parking lots and non-public roadways,

including the ingress and egress routes and entrances to the parking lots. Colliers had the ability to give direction to Ingram under the Services Contract and to terminate the agreement.

Under Paragraph 16 of the Services Contract, Ingram agreed to the following indemnification provision (the "Indemnification Clause"):

> [Ingram] shall indemnify, defend and hold Owner, [Colliers] and each of their respective parents, subsidiaries, affiliates, related entities, and all such officers, directors, trustees, managers, partners, members, agents, employees, representatives, successors, and assigns (collectively, the "Indemnitees") harmless from and against any and all losses, costs, claims, damages, injuries, demands, settlements, judgments, expenses, fines, penalties, or liabilities of any nature or kind, including reasonable attorneys' fees, court costs, out of pocket expenses, and fees of expert witnesses (collectively "Claims") arising from relating to, or in connection with: (a) [Ingram's] or Subcontractor's (including any party for whom [Ingram] or Subcontractor may be responsible at law) (collectively "Vendor") performance or non-performance of the Services, (b) Vendor's acts that are outside the scope of this Contract, (c) Vendor's negligence, willful misconduct, violation of law, or breach of this contract…

(Crossclaim Ex. 1 at ¶ 16, ECF No. 38-1.)

Under Exhibit B of the Services Contract, Ingram was required to obtain primary commercial general liability ("CGL") insurance, non-contributory with any other insurance available to Colliers, of not less than $1,000,000 per occurrence, $2,000,000 aggregate limits, and name Colliers as an additional insured on the CGL insurance coverage (the "Insurance Clause"). (Crossclaim Ex. 1 at Ex. B, ECF No. 38-1.) The Insurance Clause further states, "All policies are to protect [Colliers] from and against liabilities arising out of the operations of Contractor and any Subcontractors pursuant to this Contract . . . ." (*Id.*)

On December 21, 2018, Adam Chmielewski sued Colliers, among others, in the Underlying Litigation, asserting claims associated with Chmielewski's injuries resulting from a slip and fall that occurred on December 22, 2016. The Underlying Litigation alleges that Colliers negligently allowed the unnatural accumulation of water, ice, and snow on the Property;

3

negligently failed to maintain the walkway, parking lot, and entranceway of the Property; and negligently allowed water, ice, and snow to remain on the Property. Ingram was not a party to the Underlying Litigation.

On January 18, 2019, Colliers tendered its defense in the Underlying Litigation to Ingram and its insurer, Owners. Owners accepted Colliers's tender of defense of the Underlying Litigation pursuant to a reservation of rights and provided Colliers a defense in the Underlying Litigation for four years. Owners filed the instant action on May 10, 2023, seeking a declaratory judgment that it did not owe insurance coverage to Colliers and seeking a reimbursement of the defense fees and indemnity expended in the Underlying Litigation. Owners paid $90,000 on behalf of Colliers to settle the Underlying Litigation, which was dismissed with prejudice by stipulation of the parties on June 26, 2023.

Colliers filed a third-party complaint against Ingram on July 27, 2023, which it re-styled to a Crossclaim on October 30, 2023. Colliers asserts two counts of breach of the Services Contract: one for failure to procure insurance and one for failure to defend and indemnify.

The Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Plaintiff Owners is a Michigan insurance corporation with a principal place of business in Lansing, Michigan, and is therefore a Michigan citizen. (Am. Compl. ¶ 3, ECF No. 35.) Defendant Colliers is a Delaware limited liability company which maintains its principal place of business in Rosemont, Illinois, and is manager operated. (*Id*. ¶ 4.) The managers of Colliers are three individuals who are citizens of California, Illinois, and Canada, respectively. (*Id*.) Colliers is therefore a citizen of California, Illinois, and Canada. *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007). Defendant Ingram is an Illinois corporation with its principal place of business in

4

Lincolnshire, Illinois, and is therefore an Illinois citizen. (*Id*. ¶ 5.) Chmielewski was a nominal party to this action and was dismissed on June 23, 2023. (ECF No. 7.)

### Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

When considering a motion to dismiss, courts "accept the allegations in the complaint as true, and . . . draw all reasonable inferences in favor of the plaintiff." *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307 (7th Cir. 2021) (citation omitted). But "allegations in the form of legal conclusions are insufficient" to survive a motion to dismiss, as are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334 (7th Cir. 2015) (citations and internal quotation marks omitted).

A "complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations. But dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus*

*Capital Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009); *Shuhaiber v. Dec*, No. 17 C 5331, 2020 WL 6781798, at *1 (N.D. Ill. Nov. 17, 2020).

The parties agree that Illinois law applies in this diversity case.

## Discussion

### I. Claim Splitting

Ingram first argues that Colliers's breach of contract claim for failure to indemnify is an indemnity claim that could have and should have been brought in the Underlying Litigation and so the claim is now barred by the doctrine prohibiting claim-splitting. Colliers disagrees, arguing that Ingram confuses a breach of contract claim with a common law claim for indemnification and that Colliers could not have brought its claims any earlier because Owners was providing a defense and indemnification in the Underlying Litigation and is only now seeking reimbursement.

The parties agree that federal courts sitting in diversity apply Illinois law to determine "the preclusive effect of prior Illinois judgments." *Creation Supply, Inc. v. Hahn*, 608 F. Supp. 3d 668, 686 (N.D. Ill. 2022) (quoting *Walczak v. Chi. Bd. of Educ.*, 739 F.3d 1013, 1016 (7th Cir. 2014)), *aff'd sub nom. Creation Supply, Inc. v. Cherrie*, 61 F.4th 511 (7th Cir. 2023); *see also Collins v. Cook Cnty.*, No. 18 C 2665, 2019 WL 414664, at *4 (N.D. Ill. Feb. 1, 2019) ("Because state law furnishes the rule of decision on that state-law claim, the Court must consider Illinois law of *res judicata* in deciding whether the rule against claim splitting bars Count II."). "The rule against claim-splitting, which is an aspect of the law of preclusion, prohibits a plaintiff from suing for part of a claim in one action and then suing for the remainder in another action." *Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1206 (Ill. 1996). "This rule is founded on the premise that litigation should have an end and that no person should be

6

unnecessarily harassed with a multiplicity of lawsuits." *Id*. at 1207. For the prohibition against claim splitting—a form of *res judicata*—to apply, "three requirements must be met: '(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) identity of cause of action; and (3) identity of parties or their privies.'" *Ward v. Decatur Mem'l Hosp.*, 160 N.E.3d 1, 9 (Ill. 2019) (citation omitted). "The bar extends not only to what was decided in the first action but also includes those matters that could have been decided in the initial action." *Id*. Under Illinois law, "[r]es judicata will not be applied where it would be fundamentally unfair to do so." *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001).

There is no dispute that the first prong is met. The Underlying Litigation ended in a dismissal with prejudice when the parties, including Colliers, entered into an agreed order to dismiss the matter based on the settlement. *See Keim v. Kalbfleisch*, 373 N.E.2d 565, 568 (Ill. App. Ct. 1978) (holding that "the dismissal with prejudice of plaintiff's first complaint, pursuant to a settlement agreement, is a final judgment on the merits" for *res judicata* purposes).

The second prong, however, is not met. Colliers contends—and Ingram does not dispute—that the transactional test applies to determine identity of cause of action, which "provides that the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 891 (Ill. 1998) (internal punctuation and citations omitted). Courts "must examine the facts that give rise to the plaintiff's right to relief . . . and assess whether they are linked in a manner such that they are part of a single transaction." *Cload ex rel. Cload v. West*, 767 N.E.2d 486, 491 (Ill. App. Ct. 2002) (citation omitted). "The factors relevant to ascertaining whether they are so linked include their relation in time, space, origin, and motivation, whether they form a convenient trial unit, and whether their treatment as a single

7

unit conforms to the parties' expectations and business usage or understanding." *Id*. (citations omitted). "The test is to be applied pragmatically." *Id*. (citations omitted).

Ingram argues that the Underlying Litigation against Colliers, and Colliers's Crossclaim in the instant suit, arise out of the same nucleus of operative facts—the slip and fall events at issue in the Underlying Litigation—so as to constitute an identity of cause of action for claim splitting purposes. Ingram contends that Colliers, by its Crossclaim, wants to litigate Ingram's alleged negligence in causing Chmielewski's slip and fall injuries in the Underlying Litigation so as to trigger a new indemnity claim here. So the argument goes, absent Chmielewski's claims in the Underlying Litigation, no indemnity claim against Ingram arising from that alleged conduct would have been set in motion here.

Ingram's relies heavily upon *Elmhurst Lincon-Mercury, Inc. Emps. 401(k) Profit Sharing Plan & Tr. v. Mears*, 215 F. Supp. 3d 659 (N.D. Ill. 2016) ("*Elmhurst*") to support its claim-splitting argument, but that case is inapposite. There, unlike here, the plaintiff—an employee profit sharing plan (the "Plan")—did not dispute that a pending parallel ERISA action involved the same parties, was based on the same cause of action, and arose from a single group of operative facts. *Id*. at 666. The *Elmhurst* court held that the district court's multiple denials in the pending parallel action of the Plan's motions for leave to amend and to file an ERISA crossclaim against the employer's insurer and a third-party claim against the insurer's counsel were entitled to preclusive effect and so barred the Plan's claims against them in the second suit. *Id*. The court noted, "[r]elevant here, often, the rule against claim splitting applies to prevent a plaintiff from filing a new lawsuit after the court in an earlier action has denied the plaintiff's request for leave to amend to add the claims later asserted in the second lawsuit." *Id*. at 665 (cleaned up). Here, there was no attempt to bring Ingram into the Underlying Litigation and no analogous denial that

8

unit conforms to the parties' expectations and business usage or understanding." *Id*. (citations omitted). "The test is to be applied pragmatically." *Id*. (citations omitted).

Ingram argues that the Underlying Litigation against Colliers, and Colliers's Crossclaim in the instant suit, arise out of the same nucleus of operative facts—the slip and fall events at issue in the Underlying Litigation—so as to constitute an identity of cause of action for claim splitting purposes. Ingram contends that Colliers, by its Crossclaim, wants to litigate Ingram's alleged negligence in causing Chmielewski's slip and fall injuries in the Underlying Litigation so as to trigger a new indemnity claim here. So the argument goes, absent Chmielewski's claims in the Underlying Litigation, no indemnity claim against Ingram arising from that alleged conduct would have been set in motion here.

Ingram's relies heavily upon *Elmhurst Lincon-Mercury, Inc. Emps. 401(k) Profit Sharing Plan & Tr. v. Mears*, 215 F. Supp. 3d 659 (N.D. Ill. 2016) ("*Elmhurst*") to support its claim-splitting argument, but that case is inapposite. There, unlike here, the plaintiff—an employee profit sharing plan (the "Plan")—did not dispute that a pending parallel ERISA action involved the same parties, was based on the same cause of action, and arose from a single group of operative facts. *Id*. at 666. The *Elmhurst* court held that the district court's multiple denials in the pending parallel action of the Plan's motions for leave to amend and to file an ERISA crossclaim against the employer's insurer and a third-party claim against the insurer's counsel were entitled to preclusive effect and so barred the Plan's claims against them in the second suit. *Id*. The court noted, "[r]elevant here, often, the rule against claim splitting applies to prevent a plaintiff from filing a new lawsuit after the court in an earlier action has denied the plaintiff's request for leave to amend to add the claims later asserted in the second lawsuit." *Id*. at 665 (cleaned up). Here, there was no attempt to bring Ingram into the Underlying Litigation and no analogous denial that

8

would have preclusive effect.

Colliers argues that its breach of contract claims against Ingram and the claims brought in the Underlying Litigation do not arise from a single group of operative facts and that the claims do not share a close temporal, spatial, origin, or motivational relationship. The Court agrees. The narrow purpose of the Underlying Litigation was to determine whether Colliers was liable for negligence for Chmielewski's December 22, 2016, slip-and-fall related injuries. By contrast, Colliers's breach of contract claims stem from Owners' decision to deny coverage on June 8, 2023, and attempts to recoup the defense and indemnification costs from Colliers. For this reason, *Creation Supply* is distinguishable; there, the court found, with little analysis, an identity of cause of action between claims brought by an insured against its insurer and its insurer's agents in separate lawsuits that both arose from the insurer's denial (through its agents) of the insured's insurance claim. 608 F. Supp. 3d at 686.

Moreover, Colliers's breach of contract claim for failure to procure insurance was not ripe while Owners was providing insurance coverage, and its breach of contract claim for failure to indemnify did not accrue at least until Owners sought to recoup defense and indemnification costs from Colliers. *Cf. In re Marriage of Hopwood*, 882 N.E.2d 205, 208 (Ill. App. Ct. 2008) ("Indemnification obligations generally accrue only on an event-fixing liability, rather than on preliminary events that eventually may lead to liability but have not yet occurred. . . . A cause of action on a contract indemnifying against loss or damage does not arise until the indemnitee has actually incurred loss. Therefore, the obligation to indemnify arises at the time of payment of the underlying claim, the payment of a judgment on the underlying claim, or payment in settlement

of an underlying claim." (cleaned up)).[1]

Colliers relies upon *Oshana v. FCL Builders, Inc.*, 994 N.E.2d 77 (Ill. App. Ct. 2013). There, the Illinois appellate court found in part that there was no identity of cause of action between a declaratory judgment ("DJ") action, which involved the construction of the terms of the insurance policy to determine whether a general contractor was an additional insured under the policy, and the general contractor's breach of contract counterclaim against its subcontractor (including for failure to procure insurance). *See id*. at 86–88. The court noted that the subcontractor was not a party to the DJ action, did not seek to intervene in that action, and its presence was not necessary therein. *Id*. at 88.

In the instant case, this Court is not tasked with determining whether an identity of cause of action exists between Owners' DJ complaint (which initiated this lawsuit) and Colliers's Crossclaim against Ingram for breach of contract, and so *Oshana* is not directly on point. Nonetheless, *Oshana* is instructive in the sense that the counterclaim defendant there, like

---

[1] Ingram argues in the alternative in a footnote that Colliers's claims have not yet accrued and so its breach of contract indemnity claim is not yet ripe because Colliers has not been ordered by any court judgment to pay Owners the defense costs or settlement payment or state that it has incurred any loss. Ingram does not further explain this argument or cite to any authority in support, and so the Court need not consider this underdeveloped argument. The Court nonetheless notes that it is plain that Owners actively pursues its intent to recover defense and indemnification amounts from Colliers, including for the settlement between Chmielewski and Colliers. *See In re Marriage of Hopwood*, 882 N.E.2d at 208 ("[I]f liability for the debt became fixed against Carol, by judgment *or settlement*, a cause of action would have accrued to her pursuant to Tim's obligation to indemnify her against liability." (emphasis added)). While not discussed by the parties, the Court further notes that the Indemnification Clause is not limited to loss: "[Ingram] shall indemnify [and] defend . . . from and against any and all losses, costs, *claims*, damages, injuries, *demands*, *settlements*, *judgments*, expenses, fines, penalties, *or liabilities of any nature or kind*, including reasonable attorneys' fees, court costs, out of pocket expenses, and fees of expert witnesses . . . ." (emphasis added). In any event, concerns of prematurity are alleviated by this Court's Order granting the parties' request that summary judgment motions on the third-party claim between Colliers and Ingram be stayed pending rulings on the Owners/Colliers summary judgment insurance coverage motions and the instant motion to dismiss. (Order, ECF No. 79.)

10

Ingram here, was neither a party nor necessary to the prior action and did not seek to intervene therein.

Finally, the Court notes that the Restatement (Second) of Judgments—which Illinois courts consult when considering whether *res judicata* applies, *see State Farm Fire & Cas. Co. v. John J. Rickhoff Sheet Metal Co.*, 914 N.E.2d 577, 589 (Ill. App. Ct. 2009)—contemplates a "subsequent action" by an indemnitee for indemnification. Restatement (Second) of Judgments § 57 (1982); *see also id*. cmt. a. (noting that the determination of an indemnitee's liability to the injured party is a separate determination from whether the loss in question falls within the terms of the indemnity obligation assumed by the indemnitor).

For all of these reasons, an identity of cause of action does not exist between the Underlying Litigation and Colliers's breach of contract Crossclaim and so the Crossclaim is not barred by the doctrine against claim splitting. The Court need not consider whether there is identity of parties or their privies.

## II. Statute of Limitations

Ingram alternatively argues that Colliers's Crossclaim should be dismissed as untimely. Ingram argues that claims for indemnification are subject to a two-year statute of limitations that runs from either the time the party seeking indemnification was (i) served with process in the underlying action, or (ii) knew or should reasonably have known of an act or omission giving rise to the action for indemnity, whichever expires later. 735 ILCS 5/13-204(b). The Underlying Litigation was filed against Colliers on December 21, 2018, and Colliers tendered the Underlying Litigation to Ingram and Ingram's insurer for defense and indemnity on January 18,

11

2019. Ingram therefore contends that Colliers's third-party complaint—filed July 27, 2023—was filed years after the two-year limitations period expired.

Colliers, on the other hand, argues that Ingram confuses Colliers's contractual indemnification claim with a common law indemnification claim. Colliers states that the exact argument raised by Ingram was rejected in *Travelers Cas. & Sur. Co. v. Bowman*, 893 N.E.2d 583 (Ill. 2008), and that the ten-year limitations period applicable to breach of contract claims applies. *See* 735 ILCS 5/13-206. The Court agrees with Colliers on both fronts. In *Bowman*, the Illinois Supreme Court plainly held that Section 13-204(b) is "not applicable when the basis for indemnity rests on a written indemnity agreement." 893 N.E.2d at 591. Rather, Section 13-204(b) applies "only when the action involves allocation of damages for implied indemnification." *Id*. Where the "claim at issue is based on a breach of express indemnification provisions in a written agreement, it is subject to the 10–year limitations period in section 13–206." *Id*. at 593. The Court is unpersuaded by Ingram's unsupported argument that *Bowman* is not controlling because it involved an underlying breach of a written performance bond rather than tortious conduct.[2]

Section 13-206 provides that a cause of action for breach of contract "shall be commenced within 10 years next after the cause of action accrued." 735 ILCS 5/13-206. Colliers's cause of action for breach of contract could not accrue until Ingram allegedly breached the Indemnification Clause and/or Insurance Clause. Colliers tendered defense and indemnity of

---

[2] The post-*Bowman* case selectively quoted from by Ingram, *Uldrych v. VHS of Illinois, Inc.*, 942 N.E.2d 1274, 1279 (Ill. 2011), is inapposite. There, the Supreme Court of Illinois found that a third-party action for implied indemnity arising out of a medical malpractice action was subject to the statute of limitations set forth in 735 ILCS 5/13-212(a) (2002), the medical malpractice statute of repose, rather than Section 13-204 (2002). The instant Crossclaim does not assert any implied indemnity claim.

the Underlying Litigation to Ingram and its insurer on January 18, 2019, and Ingram's insurer provided a defense and indemnity subject to a reservation of rights until on or about May 10, 2023, when Owners filed the instant DJ action seeking a declaration of no coverage and recoupment of the amounts it had expended in defense and indemnity of Colliers. Colliers had no apparent basis to allege breach of the Indemnification and/or Insurance Clauses until that time. Colliers filed its third-party complaint for breach of contract against Ingram on July 27, 2023—well within the ten-year statute of limitations. Colliers's claims are therefore timely.

### III. Failure to State a Claim

Ingram next argues in the alternative that Colliers fails to state a claim under either of the express provisions of the Services Contract. The Court addresses each provision in turn.

#### a. Count I – Breach of Contract for Failure to Procure Insurance

Ingram argues that Colliers failed to allege that a condition precedent to triggering Ingram's contractual obligation to procure insurance was satisfied. Ingram points to the language of the Insurance Clause stating, "All policies are to protect [Colliers] from and against liabilities arising out of the operations of Contractor and any Subcontractors pursuant to this Contract . . . ." Ingram argues that for its contractual insurance obligation to become effective, an event first had to be established: the liability for Colliers's insurance claim had to arise out of Ingram's operations. Ingram contends that that conditional event was never, and can never, be established because Ingram was not a party to the Underlying Litigation—the issue of whether Chmielewski's injuries arose from Ingram's operations was never litigated, and so Ingram never had the opportunity to refute those claims. Ingram relies solely upon the general principle of contract law regarding conditions precedent but cites to no cases directly on point. *See, e.g.*,

13

*Quantum Mgmt. Grp., Ltd. v. Univ. of Chi. Hosps.*, 283 F.3d 901, 906 (7th Cir. 2002) ("Under Illinois law, a condition precedent is some act that must be performed or event that must occur before a contract becomes effective or before one party to an existing contract is obligated to perform. . . . Where a condition precedent is not satisfied, no breach of contract occurs for failure to perform." (internal punctuation and citation omitted)).

Colliers's response is brief, arguing that its breach of contract claim should not be controlled by the whims of the underlying plaintiff's decision not to add Ingram as a defendant in the Underlying Litigation rather than the actions of the parties to the contract. Colliers contends that it alleges that the Underlying Litigation involved allegations that fell within Ingram's obligations under the Services Contract. Specifically, Colliers alleges that the underlying complaint alleged that Colliers negligently allowed the unnatural accumulation of water, ice, and snow on a parking lot, and failed to properly salt the parking lot. (Crossclaim ¶ 13.) Colliers further alleges that these allegations specifically involved the services Ingram was to perform on the Property. (*Id*. ¶ 14.) Colliers argues that these allegations adequately allege that the defense and settlement of the Underlying Litigation "aris[e] from" Ingram's "performance or non-performance" of its contractual obligations.

While both parties' arguments are sparse, Colliers has the better one. "The cardinal rule of contract interpretation is to discern the parties' intent from the contract language." *Buenz v. Frontline Transp. Co.*, 882 N.E.2d 525, 528–29 (Ill. 2008) (citation omitted). "Where the contract language is unambiguous, it should be given its plain and ordinary meaning." *Id*. (citation omitted). Pursuant to the Insurance Clause, Ingram promised to "obtain and maintain" insurance that "protect[s] [Colliers] from and against liabilities arising out of the operations of [Ingram.]" Ingram misconstrues the plain language of the Indemnification Clause to require, as a

14

condition precedent to procuring insurance, a finding that Ingram is liable to Chmielewski for his injuries. But nothing in the plain language of the Insurance Clause supports that reading.

First, neither party attempts to define "arising out of" or "operations." The phrase "'arising out of' . . . mean[s] 'originating from,' 'having its origin in,' 'growing out of,' and 'flowing from.'" *Shell Oil Co. v. AC&S, Inc.*, 649 N.E.2d 946, 951–52 (Ill. App. Ct. 1995) (citation omitted). "Consonant with this definition, a 'but for' causation analysis is applied[,]" not proximate causation. *Id*. at 952.

Ingram's "operations" are not defined in the Services Contract, and so the Court "look[s] to the 'plain, ordinary, and popular meaning' of the term." *Atain Specialty Ins. Co. v. Watson*, 95 F.4th 541, 544 (7th Cir. 2024) (quoting *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1005 (Ill. 2010)). According to one dictionary definition, "operation" means "performance of a practical work or of something involving the practical application of principles or processes." *Operation*, Merriam-Webster's Collegiate Dictionary, https://unabridged.merriam-webster.com/collegiate/operation (last visited July 2, 2024). Exhibit C to the Services Contract, which sets forth the scope of "Services" Ingram promises to perform, includes sections entitled "Commencement of Operations" and "Preseason Operations" that discuss Ingram's responsibilities for snow and ice control, "snow plowing operations," when Ingram "shall continue operations to complete snow plowing and/or salting," and Ingram's "operations and scope of work." Putting together the popular meaning of the term "operations" and the Services Contract as a whole, Ingram's "operations" under the Services Contract unambiguously include performing the Services, including ice and snow removal in the parking lot and salting the parking lot.

The question of whether Chmielewski's injuries originated in, grew out of, or flowed

15

from Ingram's performance of ice and snow removal and salting in the parking lot, therefore requiring Ingram to provide insurance coverage for Colliers pursuant to the Services Contract, is a different and separate inquiry from whether Ingram's negligence proximately caused Chmielewski's injuries under Illinois law. *See, e.g.*, *Allen v. Cam Girls, LLC*, 98 N.E.3d 474, 485 (Ill. App. Ct.) (a slip-and-fall plaintiff must show defendant's alleged negligence was the proximate cause of her injuries). Ingram makes no attempt to explain its assumption that they are one and the same.

Even assuming that Chmielewski's injuries "arising out of" Ingram's operations is a condition precedent to its contractual insurance obligation, whether or not Chmielewski's injuries in fact arise out of Ingram's operations is for this Court to decide in interpreting the language of the Services Contract and need not already have been resolved prior to Colliers bringing its breach of contract claim. At this stage, Colliers adequately alleges that Colliers's liability to Chmielewski in the Underlying Litigation originated in, grew out of, or flowed from—or would not have been incurred but for—Ingram's operations (Ingram's performance of ice and snow removal and salting in the parking lot). For this reason, Ingram's motion to dismiss Count I for failure to state a claim is denied.

b. **Count II – Breach of Contract for Failure to Defend and Indemnify**

Ingram argues that Colliers's claim for breach of the Indemnification Clause impermissibly seeks indemnification for its own negligence. *See Bentley v. Palmer House Co.*, 332 F.2d 107, 110 (7th Cir. 1964) ("In the absence of . . . clear and explicit language an indemnity contract will not be construed as indemnifying one against his own negligence." (citation omitted)). "An indemnity agreement is a contract and is subject to contract interpretation rules." *Buenz v. Frontline Transp. Co.*, 882 N.E.2d 525, 528 (Ill. 2008) (citation

16

omitted). "The cardinal rule of contract interpretation is to discern the parties' intent from the contract language." *Id*. at 528–29 (citation omitted). "Where the contract language is unambiguous, it should be given its plain and ordinary meaning." *Id*. (citation omitted).

Ingram promised to "indemnify, defend and hold" Colliers "harmless from and against any and all losses, costs, claims, damages, injuries, demands, settlements, judgments, expenses, fines, penalties, or liabilities of any nature or kind, including reasonable attorneys' fees, court costs, out of pocket expenses, and fees of expert witnesses . . . arising from relating [*sic*] to, or in connection with (a) [Ingram's] . . . performance or non-performance of the Services." The parties do not dispute that the Services Contract does not expressly require Ingram to indemnify Colliers for Colliers's own negligence. Rather, Colliers contends that it is not seeking indemnification for its own negligence but for Ingram's negligence. It argues that Chmielewski sued Colliers for Ingram's contractual responsibilities under the Services Contract—specifically, snow and ice removal at the parking lot and salting the parking lot. Because the Indemnification Clause required Ingram to indemnify Colliers for Ingram's performance of its services and its negligence, Colliers argues that it has pled a valid claim for relief against Ingram.

Ingram fails to explain what negligence claims against Colliers in the Underlying Litigation did not also allegedly "arise from" the services Ingram was to perform on the Property—namely, removal of ice and snow. Ingram cites to *Illinois Union Ins. Co. v. Medline Indus., Inc.,* 2022 IL App (2d) 210175, ¶ 68, but that case discusses the reasonable expectations doctrine in the context of an insurance policy and is wholly inapplicable to the issue Ingram raises.

The complaint in the Underlying Litigation alleges that Colliers negligently allowed water, ice, and snow to remain on the Property and negligently failed to properly salt. Colliers

17

alleges that it contracted the responsibility for ice and snow removal and salting to Ingram. Plainly, Colliers alleges a breach of contract for Ingram's failure to defend and indemnify Colliers for claimed injuries flowing from Ingram's performance, or failure to perform, the Services promised in the Services Contract. Colliers therefore adequately alleges breach of the Indemnification Clause, and Ingram's motion to dismiss Count II for failure to state a claim is denied.

## Conclusion

The Court denies Ingram's motion to dismiss [29].

SO ORDERED.  ENTERED: July 24, 2024

_____
**HON. JORGE ALONSO**
**United States District Judge**