## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Owners Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23 C 2926 |
| v. | ) | |
| | ) | Hon. Jorge L. Alonso |
| Colliers Bennett & Kahnweiler, | ) | |
| LLC and Ingram Services, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

## Memorandum Opinion and Order

Plaintiff Owners Insurance Company ("Owners") filed this lawsuit seeking a declaratory judgment that it does not owe insurance coverage to Defendant Colliers Bennett Kahnweiler, LLC ("Colliers") and seeking a reimbursement of defense fees and indemnity expended in *Chmielewski v. Walker Partners and Colliers Bennett & Kahnweiler LLC*, Case No. 2018 L 013785 in the Circuit Court of Cook County, Illinois, County Department, Law Division. Shortly thereafter, Colliers filed a third-party complaint against Ingram Services, Inc. ("Ingram") asserting claims for breach of contract. Owners subsequently amended its complaint to seek declaratory judgment that it owes no duty to defend or indemnify Ingram against Colliers' third-party complaint. Colliers accordingly restyled its third-party complaint as a crossclaim. Owners now moves for summary judgment against Ingram. For the reasons that follow, the Court denies Owners' motion. [83] Owners has 14 days to show cause as to why the Court should not *sua sponte* award summary judgment in Ingram's favor on the issue of Owners' duty to defend Ingram.

## Background

Colliers managed property owned by North Shore Industrial Holdings LLC ("North

Shore") located at 7601–7661 New Gross Point Road in Skokie, Illinois. On November 10, 2014, North Shore, by and through its agent Colliers, entered into a services contract with Ingram under which Ingram agreed to provide snow and ice management services at the property, which involved plowing and salting of parking lots and non-public roadways, including the ingress and egress routes and entrances to the parking lots. Colliers had the ability to give direction to Ingram under the Services Contract and to terminate the agreement. Under Exhibit B of the services contract, Ingram was required to obtain commercial general liability insurance for Colliers. Under Paragraph 16 of the Services Contract, Ingram agreed to the following indemnification provision:

> [Ingram] shall indemnify, defend and hold Owner, [Colliers] and each of their respective parents, subsidiaries, affiliates, related entities, and all such officers, directors, trustees, managers, partners, members, agents, employees, representatives, successors, and assigns (collectively, the "Indemnitees") harmless from and against any and all losses, costs, claims, damages, injuries, demands, settlements, judgments, expenses, fines, penalties, or liabilities of any nature or kind, including reasonable attorneys' fees, court costs, out of pocket expenses, and fees of expert witnesses (collectively "Claims") arising from relating to, or in connection with: (a) [Ingram's] or Subcontractor's (including any party for whom [Ingram] or Subcontractor may be responsible at law) (collectively "Vendor") performance or non-performance of the Services, (b) Vendor's acts that are outside the scope of this Contract, (c) Vendor's negligence, willful misconduct, violation of law, or breach of this contract . . .

(ECF No. 38-1 at § 16.)

On December 21, 2018, Adam Chmielewski sued Colliers, alleging he sustained injuries from a slip and fall in 2016. He alleged that Colliers performed snow and ice removal negligently, leading to his injures. Ingram was responsible for performing the snow and ice removal services that were the subject of Chmielewski's complaint, but it was never a party to the litigation.

Owners defended Colliers for approximately four years in the *Chmielewski* litigation. Owners filed the instant action on May 10, 2023, seeking a declaratory judgment that it did not

owe Colliers insurance coverage and seeking reimbursement of the defense fees and indemnity expended. After this, Owners paid $90,000 on Colliers' behalf to settle the *Chmielewski* litigation, which was voluntarily dismissed with prejudice pursuant to settlement on June 26, 2023.

Colliers subsequently filed crossclaims against Ingram asserting that, should Owners prevail against Colliers, Ingram breached the services agreement by failing to provide insurance to Colliers and failing to defend and indemnify Colliers in the *Chmielewski* litigation.

Owners denies that it owes Ingram a duty to defend or indemnify as to these claims. The insurance policy between Ingram and Owners provides that Owners has a duty to defend and indemnify Ingram with respect to bodily injury as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> b. This insurance applies to "bodily injury" . . . only if:
>
> (1) The "bodily injury" . . . is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" . . . occurs during the policy period[.]

(ECF No. 35-1 at 137.)

The policy defines "Bodily Injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.*) The policy defines "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*)

The policy excludes certain contractual liability for bodily injury from coverage, but only when "the insured is obligated to pay damages by reason of the assumption of liability in a contract

3

or agreement." (ECF No. 35-1 at 138.) This "exclusion does not apply to liability for damages . . . that the insured would have in the absence of the contract or agreement." (*Id.*)

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the evidentiary record and views all the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Further, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

## Discussion

The instant dispute concerns whether Owners has a duty to defend Ingram against Colliers' crossclaim. Owners argues that it has no duty to defend Ingram because Colliers asserts claims for breach of contract, but the policy covers only damages for bodily injury, property damage, and personal or advertising injury, not economic damages. Owners has not met its burden for summary

judgment with respect to whether Owners had a duty to defend Ingram from Colliers' claim for indemnification. It follows from this conclusion that Owners is not entitled to summary judgment on the issue of whether it had a duty to defend Ingram from Colliers' claim that Ingram breached its contract by failing to procure insurance for Colliers, and the Court does not reach the merits on that issue. *Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 863 F.3d 690, 695 (7th Cir. 2017) (holding a duty to defend arises "even if only one of several theories of recovery alleged in the complaint falls within the potential coverage of the policy.") Therefore, the Court denies Owners' motion for summary judgment.

### A. Duty to Defend

A duty to defend arises when the allegations in the underlying complaint for which defense is sought fall potentially within the coverage of the insurance policy. *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 55 (Ill. 2021). In determining whether a duty-to-defend arises under Illinois law, courts generally "look[] only within the four corners of the insurance policy and the four corners of the complaint for which defense is sought." *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 579-80 (7th Cir. 2021). Courts consider the facts alleged in the underlying complaint rather than the legal labels used. *Zurich Am. Ins. Co. v. Ocwen Fin. Corp.*, 990 F.3d 1073, 1078 (7th Cir. 2021). The "underlying complaint must be liberally construed in favor of the insured [with] any doubts . . . resolved in favor of the insured." *Connecticut Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 351 (7th Cir. 2003).

### B. Colliers' Allegations

In its crossclaim, Colliers alleges that Chmielewski was injured in a slip and fall on accumulated ice and snow, and Chmielewski alleged Colliers was negligent. (ECF No. 38 at 18.)

Colliers further alleges that the allegations regarding snow and ice in the Chmielewski complaint against Colliers "specifically involved the services Ingram was to perform on the property." (*Id.* at 19.) Colliers alleges that Ingram breached the contract between the parties because it owed Colliers a duty to indemnify, defend, and hold Colliers harmless from liabilities, including settlements "arising from relating to, or in connection with . . . [Ingram's] negligence, willful misconduct, violation of law, or breach of contract[.]" (*Id.* at 18.) Colliers seeks, among other relief, an order that Ingram pay the amount of the settlement paid to Chmielewski if Owners does not owe it a duty to indemnify. (*Id.* at 20.)

**C. Owners Has Not Met Its Burden For Summary Judgment**

The Court is not persuaded that Owners is entitled to summary judgment because Chmielewski's fall could be considered an occurrence that causes bodily injury and Colliers seeks sums from Ingram "because of bodily injury," not economic damages.

In the policy, Owners agreed to indemnify Ingram for sums it "becomes legally obligated to pay as damages because of bodily injury . . . to which this policy applies." (ECF No. 35-1 at 137.) In the next sentence, Owners agreed to "defend [Ingram] against any 'suit' seeking those damages." *Id.* And "bodily injury" must be caused by an "occurrence," which is an "accident."

Construing Colliers' allegations liberally for Ingram, Colliers alleges that Chmielewski's fall was an accident that caused bodily injury. Owners puts forward no argument regarding why this accident would not fit within the definition of occurrence, which includes accidents. (ECF No. 35-1 at 137.) And Colliers' "[t]heory of the relief is . . . that a bodily injury occurred, and the damages sought flow from that bodily injury." *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 616 (7th Cir. 2010). Chmielewski's fall qualifies as an occurrence that caused bodily injury,

and Colliers' claim for indemnification was clearly brought because of that bodily injury.[1] *See id.* (explaining that a policy that covers damages "because of" bodily injury covers more than just damages for pain and suffering); *Cincinnati Ins. Co. v. H.D. Smith, L.L.C.*, 829 F.3d 771, 775 (7th Cir. 2016) (explaining that a policy that covers damages "because of" bodily injury includes "damages and losses sustained as the proximate result of" bodily injury).

The Court is not persuaded by Owners' argument that Colliers seeks to recover economic loss from Ingram. Illinois courts have held that a loss qualifies as economic when such losses are intangible and untied to injury to persons or property. *Acuity v. M/I Homes of Chicago, LLC*, 234 N.E.3d 97, 106 (Ill. 2023) ("[A]n injury is not a 'physical' injury if that property suffers merely intangible damage, such as diminution in value of a product, resulting from a component part of a product that fails to function as promised."); *Travelers Insurance Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481 (Ill. 2001) ("[C]omprehensive general liability policies . . . are intended to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses." (quotations omitted)).

Here, Colliers does not seek economic loss flowing from the breach of contract, but instead seeks indemnification tied to Chmielewski's claim for bodily injury. Owners' argument to the contrary invites this Court to repeat the mistake the district court made in *Cincinnati Ins. Co. v.*

---

[1] The Court recognizes that Colliers did not bring a claim for bodily injury directly; it brought a claim for breach of contract arising out of the indemnification provision of a contract. And the Court recognizes that the policy contains an exclusion for contractual liability. However, the Court is doubtful this exclusion would apply, because under Colliers' allegations, Ingram could be liable absent the agreement under a theory of an implied duty to indemnify. *BCS Ins. Co. v. Guy Carpenter & Co.*, 490 F.3d 597, 603 (7th Cir. 2007) ("To prevail on a claim for implied indemnity, a plaintiff must establish: (1) that there was a pre-tort relationship between the indemnitor and the indemnitee, and (2) that the indemnitee was held derivatively liable for the acts of the indemnitor.")

*H.D. Smith Wholesale Drug*, No. 12-3289, 2015 WL 4624734, at *7 (C.D. Ill. Aug. 3, 2015), *rev'd H.D. Smith*, 829 F.3d 771. The district court erroneously ruled that there was no duty to defend, considering West Virginia's allegations in the underlying complaint relating to the improper prescription of opiates to have sought economic losses because West Virginia was "not seeking damages sustained by its citizens due to the 'bodily injury'[.]" *Id.* The Seventh Circuit reversed and found a duty to defend under the policy language granting coverage to suits brought because of bodily injury. *H.D. Smith, L.L.C.*, 829 F.3d at 774. Specifically, West Virginia's allegations that it was required to spend money to combat these prescription practices were sufficient to establish a duty to defend because the damages sought were the "proximate result" of the bodily injury. *Id.* at 774–75. The Court sees no meaningful distinction between the Seventh Circuit's decision and the facts at hand here. As such, the Court will not grant Owners' motion for summary judgment on the basis that Colliers seeks only economic loss from Ingram.

Accordingly, Owners has failed to establish that there is no potential for coverage of Colliers' crossclaims under the policy, and Owners' motion for summary judgment is denied.

One final matter requires discussion. Although Ingram did not move for summary judgment, Ingram requested the Court enter summary judgment in its favor in its response to Owners' motion. (ECF No. 102 at 15.) While the Court is inclined to grant summary judgment in Ingram's favor based on the briefing to date, it must give Owners "proper notice that the court is considering granting summary judgment and . . . a fair opportunity to present evidence in opposition." *Whitfield v. Walker*, 438 F. App'x 501, 504 (7th Cir. 2011) (cleaned up) (quoting *Acequia, Inc. v. Prudential Ins. Co. of Am.,* 226 F.3d 798, 807 (7th Cir.2000)). As such, Owners has 14 days to show cause why summary judgment should not be awarded *sua sponte* against it.

8

## Conclusion

For the foregoing reasons, Owners' motion for summary judgment is denied. [83] Owners shall have 14 days to show cause as to why summary judgment should not be granted in Ingram's favor.

**SO ORDERED.**                                              **ENTERED: February 11, 2025**

**HON. JORGE ALONSO**
**United States District Judge**