UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Owners Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23 C 2926 |
| v. | ) | |
| | ) | Hon. Jorge L. Alonso |
| Colliers Bennett & Kahnweiler, LLC | ) | |
| And Ingram Services, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum Opinion and Order**

Plaintiff Owners Insurance Company ("Owners") filed this lawsuit seeking a declaratory judgment that it does not owe insurance coverage to Defendant Colliers Bennett Kahnweiler, LLC ("Colliers") and seeking reimbursement of defense fees and indemnity expended in *Chmielewski v. Walker Partners and Colliers Bennett & Kahnweiler LLC*, Case No. 2018 L 013785 in the Circuit Court of Cook County, Illinois, County Department, Law Division. Owners and Colliers have filed motions for summary judgment against one another on the issue of whether Owners owed Colliers a duty to defend and a duty to indemnify as to that litigation. For the reasons that follow, Owners' motion for summary judgment [80] is denied and Colliers' motion for summary judgment [86] is granted in part and denied in part.

**Background**

Colliers managed property owned by North Shore Industrial Holdings LLC ("North Shore") located at 7601–7661 New Gross Point Road in Skokie, Illinois. On November 10, 2014, North Shore, by and through its agent Colliers, entered into a services contract with Ingram under which Ingram agreed to provide snow and ice management services at the property, which

involved plowing and salting of parking lots and non-public roadways, including the ingress and egress routes and entrances to the parking lots. Under the terms of the services contract, Colliers had the ability to give direction to Ingram, terminate Ingram employees, and to terminate the agreement. Under Exhibit B of the services contract, Ingram was required to obtain commercial general liability insurance for Colliers.

On December 21, 2018, Adam Chmielewski sued Colliers, alleging he sustained injuries from a slip and fall in 2016. He alleged that Colliers "managed, maintained and controlled" the property and had a "duty to exercise ordinary care and caution" in managing the property and keeping it reasonably safe. (ECF No. 35-4 at 13.) Specifically, he alleges that Colliers, "by their agents, servants and employees, carelessly, negligently and improperly did one or more of the below acts or omissions," proximately causing his injuries:

  a. Carelessly and negligently owned and maintained the premises . . .;

  b. Carelessly and negligently allowed the unnatural accumulation of water, ice, and snow on the premises . . . so as to make said premises dangerous and unsafe for persons walking thereon, and especially the Plaintiff;

  c. Carelessly and negligently failed to properly maintain said walkway, parking lot and entranceway, allowing water, ice, and snow to unnaturally accumulate upon said premises;

  d. Carelessly and negligently failed to maintain the conditions of the premises, including, but not limited to, the roof, gutters, down spouts, awning, and slopes, which led to unnatural accumulation of water, ice, and snow;

  e. Carelessly and negligently allowed water, ice, and snow to remain on said property upon and along the pedestrian walkway located on said property so as to make them unsafe for use by pedestrians and especially the Plaintiff;

  f. Carelessly and negligently failed to properly salt to prevent a hazardous condition;

2

    g.  Carelessly and negligently created an unnatural accumulation of water, ice, and snow; and

    h.  Carelessly and negligently failed to warn or barricade the unnatural accumulation of water, ice, and snow so as to make said premises unsafe for pedestrians.

(*Id.* at 13-14.) Ingram was responsible for performing the snow and ice removal services subject to Chmielewski's complaint but was never a party to the litigation.

Owners defended Colliers for approximately four years in the *Chmielewski* litigation pursuant to a reservation of rights. Owners filed the instant action on May 10, 2023, seeking a declaratory judgment that it did not owe Colliers a duty to defend or indemnify in the *Chmielewski* litigation and seeking reimbursement of the defense fees and indemnity expended. After this, Owners paid $90,000 on Colliers' behalf to settle the *Chmielewski* litigation, which was voluntarily dismissed with prejudice due to settlement on June 26, 2023.

At issue is whether Colliers qualifies as an additional insured in the insurance policy Ingram obtained from Owners. The policy contained an additional insured endorsement that provided:

**BLANKET ADDITIONAL INSURED**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM.**

    A.    Under **SECTION II - WHO IS AN INSURED**, the following is added:

A person or organization is an Additional Insured, only with respect to liability arising out of "your work" for that Additional Insured by or for you:

    1.  If required in a written contract or agreement; or

    2.  If required by an oral contract or agreement only if a Certificate of Insurance

3

> was issued prior to the loss indicating that the person or organization was an Additional Insured.

(ECF No. 35-1 at 129.) The policy defines "your work" as "work or operations performed by you (Ingram) or on your (Ingram's) behalf." (*Id.* at 154.)

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the evidentiary record and views all the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Further, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

## Discussion

The instant dispute concerns whether Owners had a duty to defend and indemnify Colliers in the *Chmielewski* litigation. For the reasons that follow, the Court grants Colliers' motion for

4

summary judgment and holds that Owners had a duty to defend Colliers, and denies Owners' motion as to the same. The Court denies both Owners' and Colliers' motions for summary judgments on whether Owners had a duty to indemnify Colliers. The Court does not reach Owners' unjust enrichment and Colliers' estoppel argument, as each are relevant only to the extent that Owners owes Colliers no duty to indemnify.

### A. Duty to Defend

A duty to defend arises when the allegations in the underlying complaint for which defense is sought fall potentially within the coverage of the insurance policy. *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 55 (Ill. 2021). In determining whether a duty-to-defend arises under Illinois law, courts ordinarily "look[] only within the four corners of the insurance policy and the four corners of the complaint for which defense is sought." *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 579–80 (7th Cir. 2021). The "underlying complaint must be liberally construed in favor of the insured [with] any doubts . . . resolved in favor of the insured." *Connecticut Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 351 (7th Cir. 2003).

In their motions for summary judgment Owners and Colliers dispute whether Colliers is covered under the additional insured endorsement of the policy such that a duty to defend arose. This provision provides, in relevant part, "[a] person or organization is an Additional Insured, only with respect to liability arising out of 'your work' for that Additional Insured by or for you . . . [i]f required in a written contract or agreement." (ECF No. 35-1 at 129.) This policy provides coverage to additional insureds if their liability arises from Ingram's work for the additional insured, whether that liability is direct or vicarious. *WSP USA Inc. v. Nautilus Ins. Co.*, No. 19 CV 6731, 2023 WL

5

3226195, at *12 (N.D. Ill. May 2, 2023) (citing *Prate*, 7 f.4th at 578).

Owners does not dispute that the services contract between Colliers and Ingram required Ingram to insure Colliers, nor does it dispute that Ingram's work led to Chmielewski's injury. (ECF No. 94 at 3.) Instead, Owners argues that Colliers is not covered by the policy because there was no contract between Colliers and Ingram for snow removal services, and as such, Ingram did not perform work for Colliers. Colliers argues that Ingram provided snow removal services for it because the services agreement allowed Colliers to give direction to and terminate Ingram.

  i. **The Underlying Complaint Alleges Facts That Raise A Possibility Of Coverage**

Neither party compares the allegations in Chmielewski's complaint to the policy in much detail for purposes of determining whether a duty to defend arose; instead, they focus on extrinsic facts. But the duty to defend analysis begins through a comparison of the underlying complaint and the policy, even if an additional insured provision comes into play. For example, in *Prate*, 7 F.4th at 579, the Seventh Circuit looked only to the underlying complaint and the policy when resolving whether a duty to defend arose in a circumstance where the underlying policy covered additional insured parties only for vicarious liability arising from actions of the named insured. Applying settled Illinois case law, the Seventh Circuit asked whether the allegations in the underlying complaint sought to hold the defendant "liable—at least in part—for the actions of others, especially [the named insured]." *Id.* at 581 (citing, *inter alia*, *Pekin Insurance Co. v. Centex Homes*, 72 N.E.3d 831, 839 (Ill. App. Ct. 2017)). It explained that "one way to invoke a duty to defend is to ask whether, if [the underlying plaintiff] proves its allegations, there is any potential that [the additional insured] could be held liable for the actions or omissions of [the named insured]." *Id.* In construing the policy and the underlying complaint, the court ultimately concluded

6

that a duty to defend was owed where the allegations against the additional insured generally referenced agents of the additional insured, without specifically naming the primary insured as such an agent. *Id.* at 581–82; *see also Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 920 (7th Cir. 2020) ("For the duty to defend, it does not matter if [the named insured] itself is actually ultimately liable, and it does not matter that the underlying suit does not name [the named insured] as a defendant, or mention it.").

The facts here are similar to *Prate*. Chmielewski alleges Colliers was responsible for managing, maintaining, and controlling the at-issue property. (ECF No. 35-4 at 13.) He further alleges that Colliers disregarded its duty to "exercise ordinary care and caution" in managing and keeping the property safe. (*Id.*) Specifically, he alleges Colliers "by their agents, servants and employees, carelessly, negligently and improperly" committed numerous acts or omissions with regards to the management of water, ice, and snow on the property, listed in the background section above. (*Id.* at 13–14.) These allegations, like in *Prate*, demonstrate a possibility that Colliers' liability arose from Ingram's work for Colliers. As such, the policy and underlying complaint give rise to a duty to defend, so long as that duty is not undermined by the services contract.

   **ii.  The Services Contract Does Not Undermine The Possibility Of Coverage**

Owners argues that the Court should find no duty to defend because Ingram contracted with Northshore through the services contract, and no contract exists between Ingram and Colliers. As such, Owners argues that Ingram could not perform work for Colliers and could not be an additional insured. "Under some circumstances, a court deciding a duty to defend question may go outside the complaint and policy, and may consider, for example, a written agreement between the named insured and the additional insured." *Prate*, 7 F.4th at 580 n.2. The problem for Owners is

7

that, even assuming this instance justifies consideration of the services contract, doing so does not eliminate the possibility of coverage.

Even assuming Colliers was not a party to the services contract, this does not foreclose the possibility that Ingram nonetheless performed work for Colliers. In *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 400 (7th Cir. 2012), the Seventh Circuit rejected an argument that a project manager could not entrust work to an entity where the only contractual relationship between the two was a contract between the entity and the property owner, which the project manager signed as an agent. As such, the Court does not see why a contract between Ingram and Colliers would be necessary for Ingram to perform work for Colliers.

Owners' reliance on *Centex Homes*, 72 N.E.3d at 835 is misplaced. There, the court found the policy mandated a contract between the additional and named insured requiring the insurance of the additional insured in order for the additional insured to be covered, not that a contractual relationship was necessary for one entity to perform work for another. When Illinois courts have considered the substance of contracts between an additional insured and a named insured, they have found that the terms of the contracts are not dispositive as to whether a named insured's work could lead to liability for an additional insured. In *Pekin Ins. Co. v. Lexington Station, LLC*, 84 N.E.3d 554, 563 (Ill. App. Ct. 2017), the court ruled that a contract identifying a company as an independent contractor did not foreclose a duty to defend an additional insured despite the fact that the additional insured was covered "only with respect to vicarious liability for bodily injury . . . imputed from [the named insured] to the Additional Insured." (quotations omitted). While acknowledging that vicarious liability could not arise from an independent contractor's work, the court reasoned that "a contract is not conclusive of the nature of the relationship between the

8

parties" and that the facts of the case could establish agency status. *Id.* (quotations and citations omitted); *see also Prate*, 7 F.4th at 582 ("Illinois law recognizes, not surprisingly, that job-site realities may differ from the carefully drafted contracts.").

As such, the Court finds that the services contract does not eliminate the potential of coverage, even if it is read to make coverage less likely. "It does not matter if a finding of vicarious liability is unlikely; it is a potentiality." *Lexington Station, LLC*, 84 N.E.3d at 564. Accordingly, the Court grants Colliers' motion for summary judgment as to Owners' duty to defend and denies Owners' motion for summary judgment on the same.

### B. Duty to Indemnify

In addition, Colliers and Owners move for summary judgment on the issue of Owners' duty to indemnify Colliers, if any. In support of their positions, the parties make the same arguments regarding whether Ingram was performing work for Colliers. However, resolving this question requires consideration of materials not currently before the Court, precluding the Court from ruling on whether Owners owed Colliers a duty to indemnify.

A duty to indemnify arises when "the facts alleged *actually* fall within coverage." *Sokol & Co. v. Atl. Mut. Ins. Co.*, 430 F.3d 417, 421 (7th Cir. 2005) (emphasis in original). In making this determination in the context of a settlement, courts consider whether the settlement was in reasonable expectation of covered liability considering what the underlying plaintiff intended to prove.[1] *Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 271 (7th Cir. 2016) (holding a settlement was made in reasonable anticipation of liability through deposition testimony in the

---

1 Recently, the Seventh Circuit has indicated that the inquiry in determining the purpose of a settlement should be derived from the record in the underlying litigation, rather than from extrinsic proof introduced by the parties in the coverage action. *Astellas US Holding, Inc. v. Fed. Ins. Co.*, 66 F.4th 1055, 1069–71 (7th Cir. 2023).

underlying action); *Fed. Ins. Co. v. Binney & Smith, Inc.*, 913 N.E.2d 43, 49 (Ill. App. Ct. 2009) ("The determination of whether Binney's anticipation of liability was reasonable would turn on the quality and quantity of proof which Binney would expect to be offered against it in the underlying action." (quotations omitted)); *St. Paul Fire & Marine Ins. Co. v. Tip Top Builders, Inc.*, No. 02 C 1582, 2005 WL 8178959, at *15 (N.D. Ill. Dec. 1, 2005) (holding a settlement was in reasonable anticipation of liability when the record indicated that the named insured's work was "likely a contributing factor to the pipe burst"); *U.S. Gypsum Co. v. Admiral Ins. Co.*, 643 N.E.2d 1226, 1245 (Ill. App. Ct. 1994) ("The determination of whether Gypsum's anticipation of liability was reasonable would naturally turn on the quality and quantity of proof which Gypsum would expect to be offered against it in the underlying action.")

  For instance, in *Commonwealth Edison Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 752 N.E.2d 555, 565 (Ill. App. Ct. 2001), the court affirmed a finding of coverage when the record in the underlying litigation demonstrated that the plaintiff intended to show "that improper tree trimming was at least a major contributing factor to the damage to the line" which caused what "would have been a covered loss under National's policy" for the additional insured, as it arose out of a named insured's operations, and "there was evidence to support that allegation." In sum, the court found coverage and a reasonable anticipation of liability based on materials that this Court has not been provided.

  Here, neither party has submitted facts in its Local Rule 56.1 Statement of Facts that would allow the Court to determine what Chmielewski intended to show regarding his claim. While Colliers has put forward evidence that Chmielewski's claim related to snow and ice removal, (ECF No. 95 ¶¶ 32–37), this alone does not prove the settlement was in reasonable anticipation of

10

liability arising from Ingram's work. For its part, Owners argues that the contract shows that Owners could not be covered under the policy but provides no evidence regarding what Chmielewski intended to prove. The Court is aware that other information regarding the Chmielewski lawsuit exists, including a settlement agreement, because much of it was cited in Ingram's statement of additional material facts. (ECF No. 101.) However, without having the relevant material before it, the Court cannot determine whether a duty to indemnify has arisen as a matter of law. *Prairie Mgmt. & Dev., Inc. v. Columbia Mut. Ins. Co.*, No. 23-CV-53, 2024 WL 1157345, at *16 (N.D. Ill. Mar. 18, 2024); *Starr Indem. & Liab. Co. v. Cook Cnty., Illinois*, No. 17-CV-1430, 2021 WL 4401902, at *6 (N.D. Ill. Sept. 27, 2021). As such, the Court denies the parties' motions with respect to the duty to indemnify.

### C. The Parties' Other Arguments

The Court does not reach Colliers' argument regarding estoppel and Owners' argument regarding unjust enrichment, as reaching these issues would be premature given that they are premised on a ruling that no duty to indemnify exists.

### Conclusion

For the forgoing reasons, Colliers' motion for summary judgment [86] is granted in part and denied in part and Owners' motion for summary judgment [80] is denied.

**SO ORDERED.**                                                                 **ENTERED: February 11, 2025**

_____
**HON. JORGE ALONSO**
**United States District Judge**